[Cite as *State v. Smith*, 2014-Ohio-94.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-523 |
| v. | : | (C.P.C. No. 12CR-07-3476) |
| Carlos L. Smith, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 14, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Carlos L. Smith ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas convicting him of burglary in violation of R.C. 2911.12(A). For the reasons that follow, we affirm the judgment of the trial court.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 2, 2013, Columbus police responded to the report of an intruder at a duplex at the corner of East 18th Avenue and Lexington Avenue. The duplex owner, Frank Mathews, lived at 990 East 18th Avenue and he rented the adjacent unit at 988

East 18th Avenue. However, that unit had been vacant for about one week prior to the incident. According to Mathews, shortly after 11:00 p.m., he heard noises coming from the vacant apartment next door and when he looked outside, he saw several of his neighbors standing outside and he heard someone yell "he's inside."

{¶ 3} Timothy Jennings lived at 1004 East 18th Avenue, just across the street from Mathews' duplex. He testified that he heard a loud bang coming from the Mathews' house around 11:30 p.m. When he went outside to investigate, he saw a car parked in the middle of Lexington Avenue with its hazard lights blinking and the driver's side door open. Jennings heard someone making noise inside the apartment at 988 East 18th Avenue and then he saw a man run out onto the front porch. Jennings recognized the man as the individual who had given him a ride home earlier that day.

{¶ 4} According to Jennings, the man threw a flower pot and several other items at him, striking him with what he later came to believe were bolt cutters. Jennings ran to his apartment and told his wife to call the police. Jennings grabbed an old Samurai sword from his home and returned to the scene of the burglary. Jennings managed to keep the intruder from fleeing until police arrived.

{¶ 5} Columbus Police Officer Ricky Anderson and his partner entered the apartment and found appellant lying on the kitchen floor in front of the stove. Appellant did not respond to the officers' commands until Officer Anderson threatened him with a taser. When Officer Anderson asked appellant why he was in the apartment, appellant told him that he lived there. Officer Anderson placed appellant under arrest. According to Officer Anderson, appellant made no claim the he was robbed and then chased into the apartment. Officer Anderson later found a pair of bolt cutters in the street near the broken flower pot and amongst the other items appellant had thrown at Jennings. (State's exhibit No. 4.)

{¶ 6} On July 11, 2012, a Franklin County Grand Jury indicted appellant on two counts of burglary: Count 1 of the indictment charged appellant with burglary of the vacant apartment located at 988 East 18th Avenue; and Count 2 of the indictment charged him with burglary of 990 East 18th Avenue. A jury found appellant guilty of

Count 1 of the indictment but not guilty as to Count 2 of the indictment. The trial court sentenced appellant to three years in prison.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Appellant has appealed from his conviction assigning the following as error:

[I.] The trial court committed plain error by providing an erroneous jury instruction on the underlying offense of criminal damaging.

[II.] The judgment of the trial court is not supported by sufficient, credible evidence.

[III.] The judgment of the trial court is against the manifest weight of the evidence.

## III. STANDARD OF REVIEW

### A. Jury Instruction

{¶ 8} Appellant did not object to the instruction given by the trial court on the elements of criminal damaging. Accordingly, our standard of review on appeal is plain error. *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 62. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We notice plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." *Id.* Under the plain error standard:

> First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

*Id.*

{¶ 9} Therefore, plain error is not present unless, but for the error complained of, the outcome of the trial would have been different. *Long* at paragraph two of the syllabus; *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 78.

### B. Sufficiency and Manifest Weight

{¶ 10} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78; and *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396.

{¶ 11} While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

### IV. LEGAL ANALYSIS

{¶ 12} For purposes of clarity, we will consider appellant's assignments of error out-of-order. In his second assignment of error, appellant claims that plaintiff-appellee, the State of Ohio ("the State"), presented insufficient evidence to establish his guilt of burglary beyond a reasonable doubt. We disagree.

{¶ 13} "Burglary" is defined in R.C. 2911.12 in relevant part as follows:

> (A) No person, by force, stealth, or deception, shall do any of the following:

* * *

> (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, *with purpose to commit* in the structure or separately secured or separately occupied portion of the structure any *criminal offense.*

(Emphasis added.)

{¶ 14} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Appellant argues that the evidence is not legally sufficient to convince a rational jury, beyond a reasonable doubt, that he entered upon the premises "with [the] purpose to commit * * * any criminal offense." R.C. 2911.12(A)(3). We disagree.

{¶ 15} Pursuant to R.C. 2913.02(A), a person is guilty of "theft" if the person, with purpose to deprive the owner of the property, knowingly obtains or exerts control over such property without the consent of the owner. *State v. Brown,* 10th Dist. No. 10AP-1204, 2011-Ohio-4766. Officers found appellant inside an apartment belonging to Mathews, and appellant admitted that he did not have Mathews' permission to be there. The physical evidence presented by the State supports a finding that appellant gained entry to the residence by removing bolts and a grate from the security door to the porch, breaking the handle of the interior screen door, and kicking open the front door which was locked and dead-bolted. Mathews testified that the kitchen stove did not work when the new tenants moved into the apartment, and that he subsequently discovered that copper wires had been removed from the back of the stove.

{¶ 16} The State also presented evidence that police found bolt cutters among the items thrown at Jennings by appellant. Additionally, Mathews had seen appellant's vehicle outside the residence as the previous tenants were moving out, which permits the inference that appellant knew the apartment would be vacant on the night of the break-in.

{¶ 17} The State was not required to prove that appellant actually committed a theft offense inside Mathews' apartment in order to prove that appellant committed

burglary; just that appellant committed a trespass with the purpose to commit theft.  R.C. 2911.12(A)(3); *State v. Brooks,* 101 Ohio App.3d 260 (2d Dist.1995).  In our opinion, the State's evidence, if believed,  is sufficient to convince a rational trier of fact that appellant trespassed upon Mathews' premises for the purpose of committing theft.  Accordingly, appellant's second assignment of error is overruled.

{¶ 18} In his third assignment of error, appellant argues that his conviction of burglary is against the manifest weight of the evidence.  Again, we disagree.

{¶ 19}  Appellant elected to testify in his own defense.  According to appellant, he first met Jennings on July 2, 2012, at a gas station at the corner of 5th and Clove.  Appellant testified that Jennings offered to pay for $20 worth of gas in exchange for a ride from appellant.  Appellant agreed to the exchange and he drove Jennings to his home "off 17th Avenue" so that Jennings could retrieve his identification.  (Tr. 133-34.)  Jennings returned to the vehicle along with another individual by the name of Steven Rose.  According to appellant, Jennings asked him to drive to a local store where he and Rose could exchange food stamps for cash.  Jennings promised to give appellant some of the money.  Over the next several hours, appellant drove Jennings and Rose to a number of area stores to exchange food stamps for cash.  At some point, Jennings and Rose bought some beer and they gave one to appellant.

{¶ 20} After they had gone to several more stores, Rose said that he lost the food stamp card.  They searched for the missing card but had no luck.  Appellant testified that on the drive back to Jennings' place, he began to feel lightheaded.  Appellant suspected that Jennings or Rose put something in his beer.  According to appellant, when he stopped on Lexington Avenue to let Jennings out of the vehicle, Rose and Jennings attacked him and stole his wallet and cell phone.  Appellant fled from the car and ran onto the porch of the nearest residence where he continued to fight with Jennings and Rose.

{¶ 21} When later confronted by Officer Anderson in Mathews' apartment, appellant told Officer Anderson that he lived in the apartment.  Appellant claims that he also told Officer Anderson that Rose and Jennings had drugged, assaulted, and robbed him, and that he ran into the home because he was scared.

{¶ 22} As noted above, the State presented sufficient evidence to support a conviction beyond a reasonable doubt.  Although appellant's testimony, if believed, arguably presents an alternative theory for the jury to consider, it is clear that the jury disbelieved appellant.  Upon review of the evidence, we cannot say that the jury lost its way in assessing appellant's credibility and in finding him guilty of burglary.

{¶ 23} Appellant attempted to explain away his presence in Mathews' property, but there are several problems with his story.  For example, Mathews testified that he had seen appellant's car parked in front of the residence earlier that day and that his former tenants were loading their personal items into the car.  Appellant denies this. Similarly, appellant testified that the doors to the residence were unlocked, but the physical evidence shows that the door to the apartment had been broken into from the outside, that the handle to the screen door had been torn off, and that bolts and a grate had been removed from the door to the porch.  Mathews testified that he was sure that he locked both interior doors to the apartment at 988 East 18th Avenue.  He was also sure that the doors to the property were undamaged prior to the incident.  Appellant testified that he did not know how any of this damage occurred.

{¶ 24} Appellant admitted that he lied to Officer Anderson when he told him that he lived at the residence.  Appellant also admitted that he had a prior conviction for robbery, receiving stolen property, and a drug offense.  Such evidence is probative of appellant's credibility.  *See* Evid.R. 609.  Appellant testified that he "wasn't in [his] right mind" when he lied to Officer Anderson because Jennings and Rose had drugged him. (Tr. 163.)  Appellant was certain, however, that he informed Officer Anderson that two unidentified men had robbed him and chased him into the residence.[1]

{¶ 25} In order for the jury to accept appellant's version of the facts, the jury would have to believe that appellant was not in his right mind when he lied to Officer Anderson but that he was lucid when he told Officer Anderson that two men had robbed him, fought with him, and chased him into the residence.  The jury would also have to conclude that Officer Anderson lied when he testified that appellant failed to mention this incident.

---

[1] Appellant claims that he did not know Jennings or Rose by name when the incident occurred but that he later learned their identities during pre-trial discovery.

{¶ 26} Appellant points out that Jennings' testimony corroborated portions of his story. Indeed, Jennings admitted that he and Rose met appellant earlier in the day at a store; that Rose had been previously acquainted with appellant; that he and Rose drank beer with appellant; and that appellant gave him a ride home from the store.[2] While we agree that Jennings' testimony squares with a portion of appellant's story, the dubious aspects of appellant's testimony are both inconsistent with the physical evidence and uncorroborated. In short, upon review of all of the evidence, we cannot say that the jury lost its way in assessing the weight and credibility of the evidence and in finding appellant guilty of burglary beyond a reasonable doubt.

{¶ 27} For the foregoing reasons, appellant's third assignment of error is overruled.

{¶ 28} In his first assignment of error, appellant contends that the trial court committed plain error by failing to charge the jury as to the mental state required for a conviction of criminal damaging. We disagree.

{¶ 29} A person is guilty of criminal damaging if the person, by any means, knowingly causes or creates a substantial risk of physical harm to any property of another, without the other's consent. *See* R.C. 2909.06(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 30} We agree with appellant that "knowingly" is the required mental state for a conviction of criminal damaging. We also agree that the trial court omitted the word "knowingly" from its jury instruction on criminal damaging. The jury, however, did not find appellant guilty of criminal damaging. Rather, the jury found appellant guilty of burglary. There is no question that the trial court properly charged the jury on the elements of both "burglary" and "theft," including the required mental state for each offense. As noted above, the State presented sufficient evidence to convince a rational

---

[2]The trial transcript reveals that Rose was incarcerated at the time of trial. The parties stipulated that if he were to testify he would say that he has never met appellant but that he may have drank beer with Jennings on one or more occasions; and that he may have drank beer with Jennings on July 2, 2012, but he has no memory of visiting any stores with him.

trier of fact, beyond a reasonable doubt, that appellant trespassed upon Mathews' property with the purpose of committing theft. Consequently, even if the trial court erred by failing to instruct the jury as to the mental state required to find appellant guilty of criminal damaging, the error was clearly harmless to the proceedings. In other words, the erroneous instruction could not have changed the outcome of the trial and it is not plain error. *Long*; *Gardner*, supra. Appellant's first assignment of error is overruled.

## V. CONCLUSION

{¶ 31} Having overruled each of appellant's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and O'GRADY, JJ., concur.

————————————